IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO. 4:66-CV-40-SA-JMV

GREENWOOD PUBLIC SCHOOL DISTRICT                                       DEFENDANT

ORDER OF DISMISSAL

In 2017, the United States initiated its most recent periodic review of the Greenwood Public School District's ("District") compliance with the Court's school desegregation orders and applicable federal law. After reviewing the information and data provided by the District, the United States advised the District that it has fulfilled its affirmative desegregation obligations under the Fourteenth Amendment and applicable federal law for a reasonable period of time and has eliminated the vestiges of past *de jure* discrimination to the extent practicable. Now before the Court is a Joint Motion [40] for Declaration of Unitary Status filed by the Greenwood Public School District and the United States.

*Procedural History*

On August 1, 1966, the United States filed its complaint and a motion for preliminary injunction against the District challenging its racially segregated system of public education under Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c *et seq*. The Court held a hearing on the motion and, on August 26, 1966, issued an order enjoining the District from promoting segregation in its schools and requiring the District to file a desegregation plan to "immediate[ly] start" the desegregation of all schools consistent with the standards set forth in *Singleton v. Jackson Municipal Separate School District*, 348 F.2d 729 (5th Cir. 1965).

The District submitted several desegregation plans for court approval between 1966 and 1970, and the Court entered over ten school desegregation orders. The District and the United

States actively litigated the constitutionality of these orders and filed several appeals with the Fifth Circuit.[1] On remand from the Fifth Circuit, the Court issued an Order on January 23, 1970, setting forth the requirements for desegregation that the District must implement to ensure that the District was not "maintaining any classrooms or sections in any school building on a racially segregated basis." *See* Order [40-2]. The January 1970 Order also required the District to desegregate its faculty, extracurricular activities, transportation, and facilities. *Id*.

In March 1970, the Court consolidated the case brought by the United States with a case filed by a group of private plaintiffs challenging the ongoing racial segregation in the District schools. *See Lilly Russell v. Greenwood Mun. Sep. Sch. Dist.*, GC 6963-K. The private plaintiffs alleged that the January 1970 Order was unconstitutional, as the four racially identifiable black schools remained majority black under the Order. A few months later, on July 27, 1970 and August 18, 1970, the Court issued a Memorandum Opinion and Order and Supplemental Order rescinding the student enrollment portion of its January 1970 Order and ordering the District to submit a revised plan with district-wide senior and junior high schools and five attendance-zone-based elementary schools.

The United States and private plaintiffs appealed, and the Fifth Circuit reversed and remanded the case, requiring the District to implement a plan for elementary schools that will "accomplish a greater degree of desegregation." *Russell v. Greenwood Mun. Sep. Sch. Dist.*, 445 F.2d 388, 389 (5th Cir. 1971). In accordance with the Fifth Circuit's opinion, the Court entered an

---

[1]*See United States v. Greenwood Mun. Sep. Sch. Dist.*, 406 F.2d 1086 (5th Cir. 1969), *cert. denied*, 395 U.S. 907 (1969); *United States v. Greenwood Mun. Sep. Sch. Dist.*, 422 F.2d 1250 (5th Cir. 1970); *Russell v. Greenwood Mun. Sep. Sch. Dist.*, 445 F.2d 388 (5th Cir. 1971); *United States v. Greenwood Mun. Sep. Sch. Dist.*, 444 F.2d 544, vacated as moot by *en banc* court, 454 F.2d 282 (1972); *United States v. Greenwood Mun. Sep. Sch. Dist.*, 460 F.2d 1205 (5th Cir. 1972).

Order on August 16, 1971 creating five schools with grades 1 to 8.[2] Aside from orders amending and enforcing the student attendance zones, the January 1970, July 1970, August 1970, and August 1971 Orders (amended by the order on requiring free transportation) remain the operative orders that outline the District's desegregation obligations.

The United States moved for supplemental relief in 1978 regarding inter-district transfers between the Greenwood Municipal Separate School District and Leflore County School District, and the Court consolidated these two desegregation cases for this purpose. On August 28, 1978, the Court issued an Order permanently enjoining the District from accepting transfers of white students from Leflore County School District to Greenwood High School.

Between 1978 and 2017, the Court granted the District's motions to: amend attendance zones (Aug. 9, 1982 Order; July 28, 1993 Order); close W.C. Williams Elementary School (June 30, 2015 Order, Doc. 35); and reopen W.C. Williams as a pre-kindergarten through first grade school (July 21, 2017 Order, Doc. 37).

For many years, the District submitted semi-annual reports pursuant to the Court's Orders. In letters dated April 21, 2017, December 8, 2017, January 29, 2018 and August 13, 2018, the United States requested additional information from the District regarding its compliance with its desegregation obligations. On May 16, 2019, the United States conducted a site visit to the District. The United States analyzed the information and data provided by the District and concluded that the District met its desegregation obligations.[3]

---

[2] The Order required the Board to provide free transportation for students in the majority-to-minority transfer program, but did not require free transportation for students in non-contiguous attendance zones. The Fifth Circuit later reversed this decision and required District to provide free transportation to all students. *See United States v. Greenwood Mun. Sep. Sch. Dist.*, 460 F.2d 1205 (5th Cir. 1972).

[3] The United States contacted the North Mississippi Rural Legal Services, the last known counsel of record for private plaintiffs in the consolidated Leflore County and Greenwood desegregation case, to notify them that the District and United States intended to file a joint motion for unitary status dismissing the United States' case against the District. The North Mississippi Rural Legal Services informed the United States that they are no longer counsel of record for

Effective July 1, 2019, pursuant to H.B. 987, the Mississippi Legislature will administratively consolidate the Greenwood Municipal Separate School District and Leflore County School Districts. The Court dismissed the desegregation case against Leflore County School District in 2005. *See* Order of Dismissal [40-1]; *see also United States v. Leflore Cty. Sch. Dist.*, No. 4:66-CV-0040 (N.D. Miss., Mar. 1, 2005).

*Legal Standard*

Courts have long recognized that the goal of the school desegregation process is to promptly convert a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green v. Cnty. Sch. Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 3 442, 88 S. Ct. 1689, 20 L. Ed. 2d 716 (1968). The standard established by the Supreme Court for determining whether a school district has achieved unitary status, thus warranting termination of judicial supervision, is whether: (1) the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) the school district has eliminated the vestiges of past de jure discrimination to the extent practicable; and (3) the school district has demonstrated a good faith commitment to the whole of the Court's order and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89, 115 S. Ct. 2038, 132 L. Ed. 2d 63 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498, 112 S. Ct. 1430, 118 L. Ed. 2d 108 (1992); *Bod of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50, 111 S. Ct. 630, 112 L. Ed. 2d 715 (1991).

---

the private plaintiffs in the Greenwood desegregation case. The United States and District Counsel's attempts to reach Ms. Lilly Russell, the original named plaintiff, by phone and at her home, were unsuccessful.

The Supreme Court has identified six areas, commonly known as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual school system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green*, 391 U.S. at 435, 88 S. Ct. 1689; *see Bd. of Educ. of Okla. City Pub. Sch.*, 498 U.S. at 250, 111 S. Ct. 630. The *Green* factors, however, are not intended to be a "rigid framework." The Supreme Court has approved consideration of other indicia, such as "quality of education," as important factors in determining whether the District has fulfilled its desegregation obligations. *See Freeman*, 503 U.S. at 492-93, 112 S. Ct. 1430.

*Discussion and Analysis*

Prior to the 1966-1967 school year, there were approximately 3,300 white students and 2,800 black students in the District. *See Russell*, 445 F.2d at 389; Def. Rep. Required Ct. Order, Mar. 1, 1983. During the 1966-1967 school year, 9 black students or 0.3% of the overall black student population attended formerly segregated white schools. *United States*, 406 F.2d at 1092. That number increased gradually each year as black parents volunteered to send their children to formerly white schools. In the 1967-1968 and 1968-1969 school years, 18 and 51 black students, respectively, attended formerly white schools. *Id*. at 1092, 1092 n.6. According to the District's October 1969 report filed with the Court, 334 black students, or 10% of the black student population, attended formerly white schools during the 1969-1970 school year, and the District employed eleven black faculty members at the formerly white schools. Def. Report of Aug. 1, 1969.

After the Court entered the January 1970 Order, the District began to achieve some progress towards desegregation. For the 1970-1971 school year, Greenwood High had 566 white

students and 515 black students. *Russell*, 445 F.2d at 390. However, every white seventh- and eighth-grade student in the District, who was zoned to attend a single-grade middle school under the January 1970 Order, withdrew. *Id.* at 389 (Coleman, J., dissenting). All of the 100 white students zoned for Threadgill High School and the 318 white students zoned for Threadgill Elementary School, formerly segregated black schools, withdrew or transferred to other schools. Order, Jul. 27, 1970. Many white parents transferred their children to nearby private schools including Pillow Academy, an all-white segregation academy founded in 1966. Between 1966 and 1972, the white student population in the District decreased from 3,327 to 1,795. *Id.* at 389 (Coleman, J., dissenting); Def. Report of Aug. 16, 1971. The white student population continued to decrease over the years. In the 2018-2019 school year, approximately one hundred white students attended District schools. Def. Report of Mar. 1, 2019.

The District enrolled 2,680 students in the 2018-2019 school year, as shown below.

2018-2019 Student Enrollment
(as of March 1, 2019 based on its most recent report)

| School | Grades served | Black students | White students | Other students | Total |
|---|---|---|---|---|---|
| Threadgill Primary | PK – 1 | 279 | 4 | 2 | 285 |
| Bankston Elementary | K – 6 | 232 | 87 | 49 | 368 |
| Davis Elementary | K – 6 | 512 | 2 | 1 | 515 |
| Threadgill Elementary | 2 – 6 | 500 | 4 | 0 | 504 |
| Greenwood Middle | 7 – 8 | 346 | 6 | 4 | 356 |
| Greenwood High | 9 – 12 | 635 | 5 | 12 | 652 |
| Total | PK – 12 | 2,504 | 108 | 68 | 2,680 |

With respect to student transfers, the District no longer has a majority-to-minority transfer program because all of its schools are majority black. In the 2018-2019 school year, the District approved twelve inter-district transfers of black students from Leflore and Holmes County School District to Threadgill Elementary and Greenwood Middle School. The United States also reviewed the District's student assignment practices with respect to discipline and special education and did not find evidence of ongoing racial discrimination.

The District employed 207 full-time professional instructional staff in the 2018-2019 school year, of whom 157 were black (76%) and 46 were white (22%), as shown below.

Professional Instructional Staff Assignment
(as of March 1, 2019 based on its most recent report)

| School | Grades Served | Black staff | White staff | Other staff | Total |
|---|---|---|---|---|---|
| Threadgill Primary | PK – 1 | 17 | 5 | 0 | 22 |
| Bankston Elementary | K – 6 | 18 | 10 | 0 | 28 |
| Davis Elementary | K – 6 | 26 | 6 | 1 | 33 |
| Threadgill Elementary | 2 – 6 | 34 | 2 | 0 | 36 |
| Greenwood Middle | 7 – 8 | 21 | 8 | 1 | 30 |
| Greenwood High | 9 – 12 | 39 | 15 | 2 | 56 |
| Alternative School | | 2 | 0 | 0 | 2 |
| Total | | 157 | 46 | 4 | 207 |

The District also employed 23 full-time employees at the Central Office during the 2018-2019 school year, of whom 21 (91%) were black and 2 (9%) were white.

With respect to facilities, the District has not made any major changes to school buildings or student assignment since the Court approved of the reopening of the former W.C. Williams

Elementary School in July 2017. *See* Order [37]. The District has no plans for closure, major construction, or expansion of any facilities. Extracurricular activities, including sports, student government, and clubs, are available to all students in the District regardless of race. In addition, the District maintains non-discriminatory policies and practices with respect to transportation and provides transportation to students in a non-segregative and non-discriminatory manner.

Based on the information and data provided by the District, and on all the related facts, the District has complied with the Court's desegregation orders for a reasonable period of time and has eliminated the vestiges of past *de jure* discrimination with respect to the *Green* factors to the extent practicable. Therefore, the Court concludes that the District has met the legal standards for a declaration of unitary status and that it is entitled to dismissal of this action.

*Conclusion*

For all of the reasons indicated above, all prior injunctions in this case are dissolved, jurisdiction is terminated, and the United States' desegregation case against the District is dismissed with prejudice.

SO ORDERED this, the 15th day of July, 2019.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE